UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HAYWOOD LONDON,                 :
    Plaintiff,              :
                            :      Case No. 3:05CV00663 (JBA)
v.                              :
                            :
SIKORSKY AIRCRAFT CORP.,        :
    Defendant.              :

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. #15]

Plaintiff Haywood London ("London") seeks damages for age discrimination against defendant Sikorsky Aircraft Corporation ("Sikorsky") under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46-60, et seq. Defendant removed this case from Connecticut Superior Court claiming federal question jurisdiction, 28 U.S.C. § 1331. (See Notice of Removal [Doc. #1] at 1-2.) Before the Court is defendant's Motion for Summary Judgment [Doc. #15], in which defendant argues that: 1) plaintiff's CFEPA claim is completely preempted by, or barred by the statute of limitations of, the Labor Management Relations Act ("LMRA"); and 2) plaintiff fails to make a prima facie case for age discrimination. For the reasons that follow, the Court DENIES defendant's summary judgment motion, finding that plaintiff's CFEPA claim is not preempted or time-barred by the LMRA. Since complete federal preemption was the basis for removal, the Court lacks jurisdiction to consider the remaining merits of defendant's motion for summary judgment, which may be

1

considered by the state court after remand.

## I. FACTS

Plaintiff London was hired at age 60 by defendant Sikorsky, a Connecticut corporation in 2003 for the position of Multi-Machinist B, a labor grade 8 position,[1] at a rate of $16.91 per hour (see Compl. [Doc. #1] ¶¶ 2, 6). Plaintiff has always worked the first shift, 7:00 a.m. to 3:30 p.m. (see Pl. 56(a)(2) ¶ 30), and has been a member of Teamsters Local Union 1150, which has a collective bargaining agreement ("CBA") with Sikorsky (see Pl. Dep. at 1, 14-15, 17) containing inter alia pay and promotion rules and anti-discrimination provisions.

Five times during his tenure at Sikorsky, London received pay upgrades. First, on August 25, 2003, plaintiff's hourly wage increased to $17.91 (id. at 37), which remained unchanged after his job title changed to Turret Lathe Operator C on November 24, 2003 (id. at 38). On December 8, 2003, plaintiff received a second raise to $18.01 per hour. (Union Contract § 7.38; Ex. C.) On December 15, 2003, plaintiff was promoted to Turret Lathe Operator B, a grade 6 position paying $19.91 per hour. (Pl. Dep. 38, 40, 78.) This third pay raise occurred despite plaintiff's failure to pass the literacy portion of the exam required to move to a grade 6 position. (Union Contract § 8.15(b); Dep. 69.)

---

[1] Sikorsky has 11 labor grades, 0 being the highest and 11 the lowest in terms of pay. (See Sikorsky Response, Def. Ex. I at 3.)

Plaintiff viewed his post-test upgrade to a grade 6 lathe B operator as a raise but not a promotion, defining "promotion" as "leaving from a machine operator to a lead man" and not merely as "[getting] a wage increase from one area to the next area." (Pl. Dep. at 72.)  Fourth, on February 16, 2004, plaintiff's wage increased to $20.51 per hour as part of a general increase at the company (id. at 40); and on March 15, 2004, plaintiff received his fifth raise to $21.62 per hour (id. at 39) as part of another general wage increase. (See Def. Ex. C.)

During 2003 and 2004 plaintiff directed repeated requests for a promotion and/or raise (Pl. 56(a)(2) ¶ 8) to his manager William Stordy and his direct supervisor Mike Renkewith (id. ¶ 34). Specifically, sometime before December 15, 2003, plaintiff asked Stordy once, and Renkewith twice, for a raise (Pl. Dep. at 78, 83); he repeated his requests to both men between March and July 2004 (id. at 81).

According to London, defendant failed to promote him and upgrade his pay, but promoted far younger employees Chris Dorosh and David Zychek. (Pl. Dep. at 88-91.) In November 2004, Renkewith offered plaintiff, then in a labor grade 5 position, a labor grade 2 position working on a manual jig bore machine. (Id. at 66-67.) Plaintiff declined because he did not view this offer as a promotion, believing that "[n]owadays running a jig bore is like going backwards. I've been working in the state-of-

3

the art facility for the last 18, 20 years and to me that's like
going backwards." (Id.)  He explained this to Renkewith: "I'm
working in an area right now where people are labor grade 2's and
3's.  Why do I have to move from where I am to another department
to receive a labor grade 2.  No one else has.  Why do I have to
move?"  (Id. at 67-68.)  London evaluated his own skill level as
exceeding that of his supervisors: "Not only can I run circles
around my union stewards, I can run circles around just about
everybody in my department when it comes down to machines, even
my lead men."  (Id. at 71.)  Plaintiff admits that in August
2004, he was "given a verbal warning for improperly making a
part," the Big E hub, which was valued at $250,000.  (Id. at 74.)

    Plaintiff claims that he was subjected to adverse comments
about his age from his coworkers and that younger workers
including Dorosh and Zychek were given raises and promotions more
frequently than he was.  London recalls Union steward Dennis
Hubbard having said "once or twice," "Be glad that you a got a
job in here.  You're an old man, 60 years old" (id. at 42-43.),
although plaintiff thought at the time that his colleagues were
"basically joking" and that he "[took] stuff like that as a joke"
(id. at 43).  On another occasion, having asked for a raise from
Stordy's boss Scott Bodington, plaintiff was "flabbergasted" when
he was moved up only one grade while "everybody else was moved up
two labor grades," and that he "could not see 20-year-old kids

4

coming out of tech school making more money than [he did]."  (Pl.
Dep. [Pl. Ex. 1] at 75-76.)  On July 15, 2004, plaintiff grieved
his labor grade classification, which was denied.  (Id. at 79,
81.)

On August 18, 2004, plaintiff filed an Affidavit of Illegal
Discriminatory Practice with the Connecticut Commission on Human
Rights and Opportunities ("CHRO").  (See Def. Ex. I.)  In that
complaint, plaintiff alleged that he was "discriminated against
in terms and conditions of employment," "earning a different rate
of pay" based on his age.  (Id. at 1.)  On March 21, 2005,
plaintiff filed suit in the Superior Court of New Haven, which
defendant removed to this Court.  (See Compl.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Federal Rule of Civil
Procedure 56(c) when the moving party establishes that there is
no genuine issue of material fact to be resolved at trial and
that the moving party is entitled to judgment as a matter of law.
See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  When
evaluating a motion for summary judgment, the Court must draw all
reasonable inferences in the light most favorable to the non-
moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).  "Summary judgment is
appropriate even in discrimination cases [and] trial courts
should not treat discrimination differently from other ultimate

questions of fact." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41

(2d Cir. 2000) (citing <u>inter alia</u> <u>Reeves v. Sanderson Plumbing</u>

<u>Prods., Inc.</u>, 530 U.S. 133, 148 (2000) (internal citations

omitted)).

## III. DISCUSSION

### A. COMPLETE PREEMPTION BY THE LMRA

Defendant contends that, because "Plaintiff's claim is no

different than his July 2004 grievance," and "[w]ages,

promotions, and labor grades are all governed by the Union

Contract" (Def. Mem. at 10), the CFEPA claim is preempted by

Section 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185(a).[2]  Section 301 represents both a jurisdictional

grant to the federal courts as well as a source of substantive

law.  It dictates "complete preemption," or the total occupation

of a field by federal law, where a state claim implicates the

"interpret[ation of] collective-bargaining agreements, [but] says

nothing about the substantive rights a State may provide to

_____

[2] The statute reads:

(a) Venue, amount, and citizenship.  Suits for
violation of contracts between an employer and a labor
organization representing employees in an industry
affecting commerce as defined in this Act, or between
any such labor organizations, may be brought in any
district court of the United States having jurisdiction
of the parties, without respect to the amount in
controversy or without regard to the citizenship of the
parties.

29 U.S.C. § 185(a).

workers when adjudication of those rights does not depend upon the interpretation of such agreements." <u>Lingle v. Norge Div. of Magic Chef</u>, 486 U.S. 399, 409-10 (1988).  Indeed, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract," <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 212 (1985).

Under the CBA between Sikorsky and the union, "the company recognizes the Sikorsky Teamsters Local 1150 . . . as the sole collective bargaining agency for the employees defined in Article II herein for the purposes set forth in the National Labor Relations Act as amended." (Union Contract § 3.1, Def. Mem. [Doc. #15], Ex. B.)  Article VII of the CBA governs wage and hour terms, including scheduled wage increases and overtime, and Article VIII outlines the seniority structure with respect to layoffs and promotions.  (<u>Id.</u> at arts. VII and VIII.)  The contract also states:

> The Company and the Union recognize that the employees covered by this Agreement may not be discriminated against in violation of the provisions of the Labor Management Relations Act of 1947, as amended; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; the Vocational Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990; or any other state or federal statute which affects the employment of employees covered by this Agreement.

(<u>Id.</u> § 4.1.)

The Court must examine whether plaintiff's age

7

discrimination claim "can be resolved without interpreting the
[CBA] itself," that is, whether "the claim is 'independent' of
the agreement for § 301 pre-emption purposes," Lingle, 486 U.S.
at 409-10.  In Peters v. Sikorsky Aircraft Corp., No. 3:04cv1066
(PCD), 2006 U.S. Dist. LEXIS 55626 (D. Conn. Aug. 10, 2006), the
plaintiff brought suit in federal court, alleging disability
discrimination under the CFEPA and breach of contract under the
CBA.  Examining the facts surrounding plaintiff's discrimination
claim — which centered largely on Sikorsky's refusal to recall
plaintiff after he was laid off — and the provisions of the CBA,
Judge Dorsey concluded that "the Plaintiff is not arguing that
Defendant interfered with rights stemming from the CBA.  Instead,
Plaintiff claims Defendant violated an independent right under
the CFEPA to be free from employment discrimination," id. at *22
(citing Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir.
1989); O'Shea v. The Detroit News, 887 F.2d 683 (6th Cir. 1989);
Welch v. General Motors Corp., 922 F.2d 287 (6th Cir. 1990)).

     Several district courts in the Second Circuit have concluded
that state law discrimination claims against unionized employers
are not preempted by the LMRA.  See Int'l Assoc. of Machinist &
Aerospace Workers v. General Electr. Co., 713 F. Supp. 547, 554
(N.D.N.Y. 1989) (remanding plaintiff's state law age
discrimination claim that did not "stem[] from the provisions of
a [CBA]"); Carvalho v. Int'l Bridge & Iron Co., No. 3:99cv605

8

(CFD), 2000 U.S. Dist. LEXIS 4419, at *15 (D. Conn. Feb. 25, 2000) (rejecting preemption argument where plaintiff claimed discriminatory retaliation under state law, where "[e]nforcement of those rights . . . [did] not depend upon any particular interpretation of the CBA or its application"); Curtis v. Airborne Freight Corp., No. 98cv4062 (SAS), 1998 U.S. Dist. LEXIS 19636, at *18 n.5 (S.D.N.Y. Dec. 17, 1998) ("The trier of fact here will need to engage in a factual inquiry to determine whether defendant engaged in disparate discipline for Caucasians and non-Caucasians [under the New York Human Rights Law], not whether defendant complied with the disciplinary requirements of the collective-bargaining agreement.").

Defendant Sikorsky further cites to additional provisions of the CBA outlining the grievance procedure that applies to "difference[s] aris[ing] between the Company, the Union, or any employee concerning the interpretation, application, or compliance with the provisions of this Agreement" (Union Contract § 6.1; art. VI). However, this reference begs the question of whether plaintiff's age discrimination claim necessitates CBA interpretation in order to utilize the McDonnell Douglas three-prong burden-shifting framework applicable to discrimination claims. See Burbank v. Blumenthal, 75 Fed. Appx. 857, 858 (2d Cir. 2003) (applying McDonnell Douglas analysis to CFEPA claim); accord Dep't of Transp. v. Comm'n on Human Rights and

9

<u>Opportunities</u>, 863 A.2d 204, 208 & n.9 (Conn. 2005).  Under the first step of the analysis, plaintiff must establish a <u>prima facie</u> case of age discrimination by showing that: (1) he belongs to a protected class; (2) he is qualified for the desired position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination based on his membership in the protected class.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).  If plaintiff meets his initial burden, in the second step the burden shifts to the defendant "to produce evidence that the plaintiff [suffered the adverse action] for a legitimate, nondiscriminatory reason." <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 142 (2000) (internal citations, quotations omitted).  The third step is implicated if defendant articulates an age-neutral basis for the adverse action, shifting the burden back to plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000).

Although the CBA provides for the scheduled wage increases and grade promotion testing (<u>see</u> <u>id.</u> art. VII), "not every question 'tangentially involving a provision of a [CBA is] preempted by § 301," <u>Baldracchi v. Pratt & Whitney Aircraft Div.</u>, 814 F.2d 102, 106 (2d Cir. 1987) (citing <u>Allis-Chalmers</u>, 471 U.S.

at 211).  London is claiming disparate treatment in promotional opportunity between himself and younger, allegedly less qualified employees, not improper application of contractual terms to him. Defendant characterizes plaintiff's claim as his belief that he deserved a similar or higher labor grade to that of Dorosh and Zychek, which it urges is solely the province for CBA application.  Plaintiff is not claiming that he was denied pay or a promotion to which he was entitled under the CBA, but instead is claiming differential treatment based on his age.  While the CBA undoubtedly provides contextual reference, adjudication of the merits of this claim of disparate treatment does not require interpretation of rights under the CBA, only examination of its comparative application.

**B. SUBJECT MATTER JURISDICTION**

Section 1331 federal question jurisdiction depends on whether a federal claim is contained in the plaintiff's "well-pleaded complaint;" this rule "is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).  Thus, "the presence of a federal question . . . in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule," and removal based on a federal defense is normally impermissible.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 398-99 (1987).

11

However, the "complete preemption doctrine" is an exception to the well-pleaded complaint rule and provides that, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. at 393.  Thus, while federal preemption and removal jurisdiction are conceptually separate issues, the defendant must be able to properly recharacterize plaintiff's state law action as an action under LMRA § 301 for federal court subject matter jurisdiction under the complete preemption doctrine.

Defendant supports its removal to federal court, and its Motion to Dismiss, on its position that, "[a]s a matter of law, Plaintiff's promotion and pay upgrade claims requiring the interpretation and application of the Collective Bargaining Agreement are preempted by Federal Labor Law and should be removed to Federal Court." (Notice of Removal ¶ C.)  In support, Sikorsky cites to three cases, which found state discrimination claims requiring interpretation of CBAs to be completely preempted under LMRA § 301: Reece v. Houston Lighting & Power, 79 F.3d 485 (5th Cir. 1996); Fant v. New England Power Service Co., 239 F.3d 8 (1st Cir. 2001); and Williams v. Comcast Cablevision of New Haven, Inc., 322 F. Supp. 2d 177 (D. Conn. 2004).  (Id.) Williams can be distinguished because all the claims held to be

12

preempted by LMRA § 301 were based on breach of implied or express contract, "all directly founded on the rights created by the [CBA]."  <u>See</u> 322 F. Supp. 2d at 185.  In <u>Fant</u>, the First Circuit held that the "hybrid cause of action" against both the employer and the union fell squarely under § 301, and that the state-law discrimination claim constituted a breach of duty under the CBA and required interpretation of the CBA provisions on leave-time, seniority, and reassignment, all "rights . . . created by the agreement."  <u>See</u> 239 F.3d at 20.  Last, <u>Reece</u> provides too cursory an analysis of why a discrimination claim involving "questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA" necessitated interpretation of the CBA to provide instructive analysis.

The Court concludes that plaintiff's disparate treatment theory of liability underlying his CFEPA complaint alleges no denial of CBA rights or violation of contractual procedures, only that Sikorsky's more favorable treatment of younger employees in pay and promotion was motivated by their age to plaintiff's disadvantage, and plaintiff's claim is therefore not completely preempted by the LMRA.  Thus, the Court lacks subject matter jurisdiction, and pursuant to Fed. R. Civ. P. 12(h)(3) the case must be remanded.

**IV.  CONCLUSION**

Accordingly, defendant's Motion for Summary Judgment [Doc. #15] is DENIED, and the Clerk is directed to remand this case to the Connecticut Superior Court for the Judicial District of New Haven.

IT IS SO ORDERED.

/s/

_____

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 30th day of January, 2007.**

14